# KATHERINE D. ROMAN, Appellant, v. JOHN C. KING.

## Division One, July 23, 1921.

1. **STEPS TO DOUBLE FLAT: Repair: Duty of Landlord.** Whenever the owner of a house demises a portion of it to which access is had by way of halls, stairways or other approaches to be used in common with the owner or tenants of other portions of the same, the owner, by such transaction, retains as to the tenant the possession and control of such undemised facilities and it is his duty to keep them or to use reasonable care to keep them in safe condition for the use of the tenant in the enjoyment of his possession. Where there was a double flat house, consisting of an upper and lower story and fronted by a common one-story porch, from which a single set of steps led down to the granitoid walk, the owner of the house, having leased the two stories to different tenants from month to month, for residence purposes, retained such possession and control of the steps as made it his duty to keep them or to use reasonable care to keep them in a safe condition for the use of both tenants.

2. ———: ———: ———: **Invitation to Use.** One who invites another to come upon his premises is bound in law to see that those premises are in such condition that the invitation may be safely accepted; and a lease, by which the landlord, by the very act of leasing them, retains the control and possession of the undemised steps leading into a double flat used for residence purposes by different tenants, is an invitation to such tenants to enter the flat by such steps, and it is his duty to so maintain them that each of the tenants can enter the flat in safety, and if he neglects to so maintain them he is liable for any injury to the tenant caused by such unsafe condition.

3. ———: ———: ———: **Eviction.** The refusal of a landlord to maintain entrance steps to his double flat house used by his tenants from month to month for residence purposes, in such condition that they may enter and depart in safety, is a method of wrongful eviction.

4. ———: **Knowledge of Unsafe Condition: Continued Use: Contributory Negligence.** The use by a tenant of the front steps to a double flat leased to different parties from month to month for

289 Mo.—41

residence purposes, after knowledge of their dangerous condition, is not of itself conclusive evidence of lack of due care, since such knowledge does not require the tenant to desist from using them in a careful manner, nor render a careful use of them contributory negligence. The law does not encourage the wrongdoer to interpose his wrong as a defense against one who has suffered from its effects. The law will not compel a tenant, without good reason, to abandon her front door, the full and free use of which in safety is included in her monthly rental, and make use of a safe set of back steps.

5. ———: **Repair of Other Steps: Evidence.** Plaintiff sued her landlord for personal injuries due to the unsafe and rotten condition to the front entrance steps to a flat, one story of which she had leased. Some time previously the defendant had employed a carpenter to repair the back steps, and this carpenter took to defendant a note on which plaintiff had written: "All work is done right." There was no evidence connecting the paper with the subject of the suit, while the testimony of defendant shows affirmatively that there was no such connection. *Held,* that the admission of the paper in evidence was prejudicial error against plaintiff.

6. ———: **Meddling With Loose Step: Contributory Negligence.** For the tenant to move the loose end of a wooden step—loose because the wooden carrier is rotten—six or seven inches, and then to put it back in the position it had occupied before, or to pick it up and show it to her neighbors and then to put it back where it was before, does not constitute an act of negligence, and does not fix upon such tenant responsibility for her injury when, subsequently, in descending the steps, said step slipped from under her foot and thereby she was thrown to the ground; and an instruction which tells the jury that such acts constitute contributory negligence which bars her recovery of damages from her landlord for such injuries is in effect a peremptory instruction to find for defendant; and is highly prejudicial to her. It is not the law that if the tenant meddles with a step leading to her leased premises in the interest of her own safety, the owner is released from all liability for negligence in creating a situation so dangerous that safety required its correction.

7. ———: **Duty of Landlord and Tenant: Negligence.** It is the duty of the landlord to exercise reasonable care to keep entrance steps to a double flat building in a safe condition for the use of the tenant of one of the stories and of all persons having social or business relations with her, and she is entitled to the free and constant use of the steps as a necessary adjunct to the enjoyment of the leased premises, and the law does not require her to cease

that enjoyment the moment the landlord chooses to permit the steps to become dangerous, but she may continue to use them, the exercise of reasonable care to be determined in view of the extent and nature of the danger created by the owner's neglect or refusal to perform his duty, and if upon due notice or with knowledge of the dangerous condition he fails to make necessary repairs and she is injured by said unsafe condition she is entitled to recover from him her damages.

Appeal from St. Louis City Circuit Court.—*Hon. M. Hartmann,* Judge.

REVERSED AND REMANDED.

*W. B. & Ford W. Thompson* for appellants.

(1) The instruction given for the plaintiff in a negligence case, (saving and excepting in cases of *res ipsa loquitur*) must confine the jury to the specific acts of negligence set out in the petition, and it is error to give a general instruction to the effect that if they find the defendant was negligent then plaintiff was entitled to recover. Likewise, where there is a good and sufficient plea of contributory negligence, wherein the specific acts of contributory negligence are stated, the court should not give a general instruction to find for the defendant, if they find that plaintiff was also guilty of negligence contributing to the injury, without restricting the finding to the acts of contributory negligence thus specifically stated in the answer. Buesching v. Gaslight Co., 73 Mo. 219; Mitchell v. Clinton, 99 Mo. 152; Fulks v. Railroad Co., 111 Mo. 335; Baker v. Ry. Co., 147 Mo. 140. (2) Defendant's instruction No. 4 is erroneous and should not have been given. There is no evidence that plaintiff "after moving the tread from the position it occupied on the risers supporting it" then undertook to place said tread back in its proper place, but did so in such a manner that when she shortly thereafter passed down said steps and went upon said tread, it became displaced and caused her to fall,

The evidence upon this feature of the case is all one way and uncontradicted, and to the effect that she placed it back in position upon the riser, just as it had been before she moved it. Further, the instruction assumed that the step before she moved it had been in its proper position, which assumed that it had been perfectly safe and would have remained perfectly safe but for the "manner" in which she placed it back, which assumption entirely contradicts the entire facts disclosed by the record. According to plaintiff the step was so loose and had remained so loose for a very long time, that one end of it could be moved out six or seven inches, while according to defendant (his mother-in-law and sister-in-law being the witnesses who shed this light upon it for defendant) it was so loose that plaintiff pulled it off the riser entirely and held it up in the air. Yet, this instruction told the jury that the step was so safe with that step resting, even thus loose, upon the riser as to exonerate the defendant for failure to repair it and make it reasonably safe, if only the jury could find that the plaintiff had placed this step back in such a manner that it afterwards slipped out as she was descending the stairway. (3) The principle of law upon which the petition of the plaintiff is based, and upon which the jury were instructed on behalf of the plaintiff, is that announced in the decision of Miller v. Geeser, 193 Mo. App. 1, and Home Realty Co. v. Carius, 224 S. W. 751.

*Kinealy & Kinealy* for respondent.

(1) If plaintiff was not entitled to recover, the question as to error in the instructions becomes immaterial. Giles v. Railroad, 212 S. W. 873; Bradley v. Tea & Coffee Co., 213 Mo. 320; Trainer v. Mining Co., 243 Mo. 359; Hurck v. Railroad, 252 Mo. 39; Frick v. Ins. Co., 223 S. W. 643. (2) In no event can a landlord be held liable for injuries unless it is shown that he retained control of the alleged defective premises.

Bender v. Weber, 250 Mo. 551; Kilroy v. City of St. Louis, 242 Mo. 79; McGinley v. Trust Co., 168 Mo. 257; Troth v. Norcross, 111 Mo. 630; Marcheck v. Klute, 133 Mo. App. 281; Land v. Hill, 157 Mo. App. 685. (3) Plaintiff in going upon the step in question was guilty of contributory negligence. 20 Cyc. 112; Town v. Armstrong, 75 Mich. 580; McGinn v. French, 107 Wis. 54; Martin v. Surman, 116 Ill. App. 282; O'Dwyer v. O'Brien, 43 N. Y. Supp. 814; Reams v. Taylor, 31 Utah, 288; Wheat v. St. Louis, 179 Mo. 572; Woodson v. Ry., 224 Mo. 685; Cohn v. City of Kansas, 108 Mo. 387; Sindlinger v. City of Kansas, 126 Mo. 315. (4) To be "without fault" in doing an act comprehends the use of ordinary care. Burdoin v. Trenton, 116 Mo. 358. (5) A party may not complain of instructions which are in harmony with one given at his request. Tranberger v. Railroad, 250 Mo. 46; Gordon v. Park, 219 Mo. 600; Lange v. Railroad, 208 Mo. 458; Christian v. Ins. Co., 143 Mo. 460. (6) The proximate cause is the one which in a natural and continuous sequence produces the result. Hudson v. Ry., 101 Mo. 1. (7) A danger need not be glaring and imminent before a plaintiff can be found guilty of contributory negligence. Bradley v. Ry., 138 Mo. 293; Bennett v. Lime Co., 146 Mo. App. 565. (8) One who voluntarily assumes a position of danger does not exercise ordinary care. 29 Cyc. 519; 20 R. C. L. 108.

BROWN, C.—Suit for damages sustained by falling on the steps of a two-story flat building known as Numbers 3209 and 3209A North Newstead Avenue, in the City of St. Louis, owned and leased as residences by defendant. The plaintiff was tenant of the upper flat. A porch extended across the entire front on Newstead Avenue, which was reached from the street by a granitoid walk to the steps about the middle of the porch. These consisted of a lower step of granitoid, and four wooden steps leading from it to the porch floor. Each flat was reached by a front door leading into the house from

this porch, which was not divided by rail or otherwise, but was common to both flats. There was also a back door, reached by stairs. The plaintiff occupied the upper flat as tenant from month to month of the defendant, the lower flat being occupied by a tenant holding by like tenure.

After stating these facts the petition proceeds: "That upon the eighteenth day of May, 1914, while plaintiff, in the exercise of ordinary care upon her part, was passing over and down said flight of wooden steps in going from the front door of said upper flat to the ground, and using said steps for the purpose of egress therefrom, in the usual and customary manner, without fault upon her part one of the wooden steps of the flight of wooden steps above mentioned became entirely loose and unfastened from the wooden carriage upon which said step was resting and slipped from under plaintiff's foot, and thereby plaintiff was thrown on a stone step at the bottom of said flight of wooden steps and fell in such manner that she sustained serious and permanent injuries to her body and nervous system."

After stating the nature of plaintiff's injuries which were serious the petition proceeds as follows:

"Plaintiff states that said flight of steps upon which she was injured were at the time of said injury in the possession of and under the control of the defendant and constituted a common stairway for the common use of defendant's tenants occupying the upper and lower flats of defendant's said two-story flat building, and that by reason thereof it was the legal duty of defendant to keep the same in a reasonably safe condition for the ordinary and necessary use of plaintiff as a tenant of the upper flat of said building. Plaintiff states that in violation of said duty said defendant negligently permitted said step to be and remain out of repair and in an unsafe and dangerous condition at the time of and for a long period of time prior to the date of said injury, in this, to-wit, that one of the boards constituting the step

or tread of said common stairway on one side thereof was loose and unfastened by reason of the wooden carriage upon which said step rested having become so rotten and decayed that said board or step could not be nailed or fastened thereto, as it would not hold a nail driven into it on said side, and said board or step in its said loose and unfastened condition had become and was unsafe for persons lawfully using the same, and that defendant knew, or in the exercise of ordinary care could have known, that said step was out of repair and unsafe and in a dangerous condition.''

Damages are alleged and asked in the sum of $25,000. The answer, after a general denial, pleads contributory negligence as follows:

''Further answering, defendant says that any injuries which plaintiff may have sustained upon the occasion referred to in the petition were due to her own negligence directly contributing thereto, in that shortly prior to the time she fell she negligently moved said step from the position it had theretofore occupied, and in that she negligently placed the board step in the place and position in which it was at the time she fell, and in that she negligently went upon said step knowing the condition in which same was at the time.'' Issue was joined by replication.

The four wooden steps leading up to the front porch were supported upon carriers of wood, and for a long time one of them had been loose at one end so that it could be moved out several inches in front of the riser beneath it. The tenants of the respective flats washed the steps alternately. The loose step had first been observed in that condition in December previous to the accident, which occurred May 18, 1914, and the plaintiff had, on several occasions, driven nails into the loose end, but the wooden carrier was so rotten that these would not take hold of it. Plaintiff, about two weeks before the accident, directed defendant's attention to its condition and told him she would move out unless he fixed

it, which he promised but failed to do until after the accident occurred. Mr. King, the defendant, denied this, and says in substance that if a tenant should so address him he would tell him to move out.

On the day of the accident the plaintiff was descending the steps with a pan full of chicken feed held in front of her; the loose steps slipped out and she fell down the steps, striking on her head and back, suffering thereby the injuries complained of.

She knew the step was loose because she had attempted to nail it down. She says she knew it was bad, but did not know how bad. She had climed up and down them several times the same day. She said that whenever she noticed it was loose she put a nail in it, but never thought of getting hurt herself. In answer to a question upon her cross-examination as to what she had done with it that morning before she was hurt she said: "Why, I pulled it out a little bit like that, showed it to Mrs. Hogan and her daughter, and *pushed it back in place and placed it back the way I always did.*"

The condition of the step was described by a policeman who saw it just after the injury as follows: "The step itself was all right, but the carrier was rotten." He said he had walked on it as he went up without noticing its condition; that this step was the second from the bottom.

The evidence that the carrier which supported it was rotten seems to be unquestioned. When it was repaired about an hour after the accident defendant was present. The carrier was thrown into the scrap heap and disappeared.

The defendant testified that in 1913 he employed one Settlemore, a carpenter, to fix the *back porch* used in connection with plaintiff's flat; that by check dated November 5, 1913, he paid this carpenter $116.89 and received from him a note signed by plaintiff as follows: "All work is done all right." Although the defendant, being on the stand at the time, gave no evidence tending

to show that this work had anything to do with the front
porch steps, the court, against the objection of the plain-
tiff, permitted the check and note to be placed in evi-
dence before the jury. The testimony of plaintiff was
that he employed this carpenter to fix the back porch;
that he knew of no other work that he did and that he
came to him for his pay with this note. The plaintiff
duly excepted to the ruling of the court in admitting
these papers.

After the evidence was in the defendant asked that
the jury be instructed to return a verdict for the defend-
ant, which was refused. The court then gave for plain-
tiff the following instruction:

(1)   The jury are instructed that if you find and
believe from all the evidence that defendant was the
owner of the premises known as Numbers 3209 and
3209A North Newstead Avenue, in the City of St. Louis,
and that on said premises there was a double flat build-
ing and that the upper flat, known as 3209A was occupied
by plaintiff and her husband and family, as the tenant of
defendant, and that the lower flat, known as 3209 North
Newstead Avenue, was occupied by another family, and
that the front entrance to said upper flat opened upon a
porch, and that from said porch to the ground there was
but one set of steps, and that said one set of steps was
used by the occupants of each of said flats (upper and
lower) in common as a common ingress and egress from
the respective flats, then it was the duty of defendants, as
the owner and landlord, to use reasonable care and dili-
gence to keep and maintain said set of steps in a reason-
ably safe and fit condition for such use by the plaintiff;
therefore, if you further find that on the day plaintiff was
injured the said steps were not in a reasonably safe and
fit condition, and that defendant either knew their con-
dition, or by the exercise of ordinary care might have
known their condition, and that defendant either knew
said condition or might by the exercise of ordinary care
have known it for such length of time before plaintiff
was injured as to have given him a reasonable oppor-

tunity and time to have repaired it before plaintiff was injured, and you further find and believe that, not withstanding said fact defendant failed to put said steps in a reasonably safe condition, and that as a direct result of defendant's said failure plaintiff, while making use of said steps and while descending said steps, without fault upon her part, as mentioned in other instructions, suffered an injury, then your verdict should be for plaintiff, and by the words 'reasonable care and diligence,' as used in this instruction, is meant such a degree of care and diligence as may reasonably be expected to be made use of by a man of ordinary intelligence, prudence and caution under like circumstances and conditions.''

Against the objection of plaintiff it gave for defendant the following instructions to which action the plaintiff duly excepted.

''3. The court instructs the jury that in no event can you find in favor of the plaintiff unless you believe from the evidence that the defendant failed to exercise ordinary care to keep the step in question in a reasonably safe condition and repair, and that the plaintiff exercised ordinary care for her own safety at the time she fell.

''4. The court instructs the jury that if you believe from the evidence that on the morning that plaintiff claims to have received her injuries she intentionally moved the tread of the step in question with her hands, either entirely or partially from the position it occupied on the risers supporting it, and that plaintiff then undertook to place said tread back in its proper position, but did so in such manner that when she shortly thereafter passed down said steps and went up on said tread it became displaced and cause her to fall, then plaintiff is not entitled to recover, and your verdict must be for the defendant.

''5. The court instructs the jury that if you believe from the evidence that on the occasion when plaintiff received the fall testified to by her she knew the condition of the step which she went upon and that in going

upon same on that occasion she failed to exercise the care which an ordinarily prudent person would have exercised under the same circumstances, and that by reason thereof received the fall of which she complains, she is not entitled to recover, and your verdict must be for the defendant.

"6.   The court instructs the jury that if you believe from the evidence that shortly before plaintiff received the fall of which she complains she lifted up the tread board of the step described by her and then negligently laid same down on its support so that it was likely to cause her to fall if she stepped upon same, and that she thereafter, while said board was in the same position in which she had placed it, if you so find, stepped upon said board and that same moved and caused her to fall, then your verdict should be in favor of the defendant.

"7.   The court instructs the jury that if you believe from the evidence that when plaintiff went upon the step in question she knew its condition, and knew of the danger, if any, of her falling if she went upon same, and that she determined to take the chance of going upon the step, then she is not entitled to recover, and your verdict should be for the defendant."

The jury under the instructions returned a verdict for defendant, upon which the judgment appealed from was entered, and this appeal was taken.

I.   We are called upon in this case to determine the liability of the owner of a house containing two separate tenements known as flats leased by him to separate tenants having no contractual relation whatever with each other, with respect to the premises, for his failure to

Duty of
Landlord.

keep the common approach to the house in a safe condition, by reason of which one of them was injured. Before proceeding to the facts presented by the record of the trial below we will briefly notice the principles relating to such liability. · These have, as might be expected, received frequent notice from the courts of both this country and England.

The doctrine of the English courts may be illustrated by the cases of Miller v. Hancock, 2 Q. B. D. (1893) 177, l. c. 180, and Hargroves & Co. v. Hartopp, 1 K. B. D. (1905) 472. In the first of these cases the defendant was the owner of premises leased in flats to tenants. The plaintiff was collector for a railway company, who in that capacity called upon the tenant of one of these flats and in coming down the staircase, through a defect in the stair, fell and broke his leg. BOWEN, L. J., said: "The tenants could only use their flats by using the staircase. The defendant, therefore, when he let the flats, impliedly granted to the tenants an easement over the staircase, which he retained in his own occupation, for the purpose of the enjoyment of the flats so let. Under those circumstances,' what is the law as to the repairs of the staircase?" He then proceeded to hold that under these circumstances the landlord had given the tenant a right to use the staircase and undertaken to keep it reasonably safe for the use of the tenants and also of those persons who would necessarily go up and down the stairs in ordinary course of business with them. He concluded that the creation of the relation of landlord and tenant in such a case would be an absurdity if not founded upon such an implied duty. His conclusion was founded upon the reasoning of Lord MANSFIELD in Taylor v. Whitehead, 2 Douglas, 745. In Hargroves & Co. v. Hartopp, this case was followed by Lord ALVERSTONE, C. J., who, in commenting upon the opinion of BOWEN, L. J., in the Miller Case, said that he understood it to mean that the duty to repair was coextensive with that created by express covenant; that is to say, that it was an absolute duty to keep the premises in safe condition at all events, and not merely a duty to take reasonable care to do so. He expresses some doubt as to the absolute nature of the duty, but declined to decide the point, placing his decision upon the ground of the failure of the landlord to exercise reasonable care. This is the general doctrine of the courts in this country. [Sawyer v. McGillicuddy, 81 Mo. 318; Shipley v. Fifty Associates, 101 Mass. 251;

Looney v. McLean, 129 Mass. 33; Home Realty Co. v. Carius, 224 S. W. (Ky.) 751; King & Metzger v. Cassell, 150 Ky. 537; Kansas Investment Co. v. Carter, 160 Mass. 421; Bissell v. Lloyd, 100 Ill. 214; O'Connor v. Andrews, 81 Tex. 28.]

This doctrine was definitely adopted by this court in McGinley v. Trust Co., 168 Mo. 257, which was followed in Turner v. Ragan, decided at the last term of this court and not yet reported at this writing. It is supported by reasoning which seems to us unanswerable, and may be stated in its direct application to this case as follows: Whenever the owner of a house demises a portion of it to which access is had by way of halls, stairways or other approaches to be used in common with the owner or tenants of other portions of the same premises, the owner, by such transaction, retains as to the tenant the possession and control of the undemised facilities, and it is his duty to keep them or to use reasonable care to keep them in safe condition for the use of the tenant in the enjoyment of his own possession. Without the application of this rule in his favor the tenancy is a farce, and the tenant from month to month, as in this case, may be evicted without notice by the simple refusal of his landlord to maintain the only means of access. The principle is well illustrated by the evidence in this case, in which the owner testified that if his tenant had threatened to leave unless such repairs should be made as to enable her to enter her apartments with safety, he would simply have told her to go. It is impossible that the application of the rules of the common law should create such a condition.

It is a principle too well established to be now thoughtlessly abandoned that one who invites another to come upon his premises is bound in law to see that those premises are in such condition that the invitation may be safely accepted. In this case the lease was an invitation to the plaintiff to enter the flat by the way already apparently provided. In return the owner exacted a monthly rental. She could only enter by cross-

ing his own premises by the use of the steps that gave way under her feet, and she was entitled to have them maintained so that she could do so in safety. Her rights under the lease constituted the measure of his duty in that respect.

The property was constructed for the purpose of a residence, and was so used. This use implies free entrance and exit for business and social purposes, and the most of the cases to which we have already referred hold that all persons so entering and leaving do so upon the implied invitation of the owner and are equally entitled to the same protection as the tenant himself.

There is one branch of the same question to which we should advert before proceeding to the facts of this case. We have already noticed the effect of failure to maintain the facilities for safe entrance upon and exit from the premises as a method of wrongful eviction, as was so plainly suggested by defendant in his testimony. This has made necessary another rule which has become thoroughly established in our jurisprudence, and is expressed by the Kentucky Court of Appeals in Home Realty Co. v. Carius, supra, as follows:

"It is urged that plaintiff's equal knowledge with defendant of the condition of the steps bars her right to recover herein. We cannot agree with this contention. These steps constituted practically the only means of access to the two apartments, and were used by both tenants, facts necessarily known to the landlord. Because of their inaccessibility and condition the other entrances were seldom used. Mere continued use of a common passageway, after knowledge of its dangerous condition, is not of itself conclusive evidence of a lack of due care on the part of the tenant, since such knowledge does not require the tenant to desist from using same in a careful manner, nor render the careful use of same contributory negligence. [Looney v. McLean, 129 Mass. 33.]"

We think the proposition expressed in these and other cases is a sound one. We do not think the law should encourage the wrongdoer in interposing his own

wrong as a defense against one who has suffered from its effects. It is true that in this case the plaintiff had access through a rear door to her back yard, and we will presume that this way wound somewhere safely to a street. It may also be that under some circumstances it might have been plaintiff's duty to protect her landlord from loss by subjecting herself to the same roundabout process, but she also had the right to consider, to some extent at least, her own convenience secured to her by her lease, even to the extent of encountering a danger which might possibly react upon the landlord who violates it. The law will not compel her, without good reason, to abandon her front door, the full and free use of which was included in her monthly rental.

II. Soon after the plaintiff moved into the house, the defendant employed one Settlemore, whom he described as "a kind of carpenter," to fix the back porch. On November 5th Settlemore came to him with a note signed by plaintiff, reading as follows: "All work is done all right." He thereupon gave Settlemore his check for $116.89 for his work on the back porch. Although the defendant in person produced these two papers in court and identified them, he made no suggestion that they referred to anything but the work on the back porch which amounted to that sum, yet the court, against the insistent objection of the plaintiff, permitted both papers to go to the jury. This action is one of the errors assigned and insisted on in this court.

*Repairing Back Steps.*

At the time these papers were introduced, the plaintiff had testified "that on Monday, the tenth of September, 1913, when her things were being moved in by the moving man, she called up the defendant over the phone and notified him that the moving man was afraid to move her heavy things in over the front steps, and that defendant told her to go ahead, that he would fix everything up," and that the man "took her piano, etc.,

up the back stairs on account of the condition of the front steps.'' She also said that in December following she found out that one of the front steps was loose. This was the step on which she fell.

This is the only evidence we can find in the record connecting these two papers with the subject of this suit, or which might be urged as an excuse for their admission in evidence. Defendant stated that he employed Settlemore to put up the porch, that the amount of the check was for that service, and that Settlemore brought him the note of his own volition to obtain his pay for that work.

The admission of these two papers in evidence amounts to a judicial direction to the jury that they tend, either of themselves or in connection with some other evidence in the case, to prove that the plaintiff, on or about the fifth day of November, 1913, expressed her satisfaction with the condition of these front steps, and that the carriers to which their ends were nailed were not rotten and dangerous at the time of the accident six and a half months later. The fact that these steps were not, in September, 1913, considered strong enough to bear the weight of a piano is no evidence that they were unsafe for the plaintiff to walk upon at that time or at any later date.

Plaintiff's explanation of this note is that she gave it to a negro paper-hanger to show that he had, satisfactorily to her, completed a little job of papering in her flat.

The thing of which plaintiff now complains is that the carriers upon which these steps rested and to which they were nailed were rotten and would not hold the nails which should keep them in place, so that one end of the step gave way beneath her feet and caused her fall. This was probably true, for the defendant was on the spot with a carpenter within an hour after the injury, and repaired the damage, using the same old step in the new structure, but throwing the carriers into the scrap heap and putting in new ones.

For the reasons we have stated we are constrained to hold that the court was in error in permitting the note and check to go to the jury as evidence pertinent to the issue before them. There is nothing in the record connecting them in any manner with that issue, while the testimony of defendant himself shows affirmatively that there was no such connection. That it was, when considered in connection with the action of the court in admitting it, highly prejudicial to the plaintiff, is evident.

III. The plaintiff testified that she had known since sometime in December, 1913, that this step was loose, and had complained to defendant about it. That he had promised to fix it and that she had tried to fix it herself, driving nails in it. That on the morning of and before the accident she had found it loose at one end, and had called the attention of Mrs. Hogan and her daughter, the mother-in-law and sister-in-law of defendant, who lived next door, to the fact by pulling out the loose end six or seven inches, and then putting it back in place.

Meddling With Loose Step: Contributory Negligence.

Mrs. Hogan and her daughter testified that she had not only done this, but had picked up the step, and then put it back in position again.

Defendant's plea of contributory negligence being limited to plaintiff's negligence in removing the step from the position it had theretofore occupied and negligently placing it in the position in which it was at the time she fell, and afterward negligently going upon it knowing the condition in which it was at the time, he asked and the court gave his instruction number four, copied in our statement, in which the jury were told that if they believed from the evidence that on the morning of the accident plaintiff "intentionally moved the tread of the step in question with her hands, either entirely or partially from the position it occupied on the risers supporting it, and that plaintiff then undertook to place said tread in its proper position, but did so in such

289 Mo.—42

manner that when she shortly thereafter passed down said steps and went upon said tread it became displaced and caused her to fall, then plaintiff is not entitled to recover.'' This was equivalent to a peremptory instruction to find for defendant. It requires no argument to demonstrate that this was error. It does not submit to the jury the question of negligence in meddling with the step, but assumes that if, as she testified, she moved the loose end out six or seven inches and then put it back in the position it had occupied before, or, as the Hogans testified, picked it up and showed it to them and then put it back where it was before, she committed an act of negligence and fixed her own responsibility for the injury, notwithstanding that she placed it in the same position that she found it. In other words, if she meddled with it at all, even in the interest of her own safety, the owner was released from all liability for negligence in creating a situation so dangerous that safety required its correction. This principle would lead to the conclusion that no person could recover for an injury received in an attempt to remove the trap set for him. He must first step into it.

In this case there is no evidence whatever that in meddling with the step the plaintiff contributed to any extent to the injury. She, testifying for herself, and both the Hogans, witnesses for the defendant upon that question, testified in substance that when plaintiff moved or picked up the step, she put it back as it was before. There is no evidence that it was within her power to mend it. The steps were undemised and in the possession of the owner, subject to the use of both his tenants for the purposes of egress and ingress, and this use he was bound to exercise all reasonable care to make safe, for which his compensation was included in his rental. If he negligently permitted it to become unsafe and that condition was the cause of the injury the fact that she may have attempted to repair it, or picked it up or laid it down without changing its condition, did not lessen

the. responsibility of the one charged with the duty of keeping it in a safe condition for her use.

IV.  As it will be necessary to reverse and remand the cause for the errors already noticed, it may be of service in connection with further proceedings in the trial court to briefly state the rule of contributory neg-
ligence as applicable to this particular class
**Contributory Negligence.** of cases.  The plaintiff was, at the time of her injuries, as tenant of the premises from month to month, entitled to use all these steps, not only for personal access to her own premises, but for the access of others having business or social relations with her which might make it necessary or desirable to her. All such persons passing in such capacity to and from her flat were, by the fact of her tenancy, entitled to reasonable care on the part of the owner of the premises with respect to such conditions of safety.  She had paid her rent in advance and her title to these facilities was complete.  The free and constant use of these steps was necessary to the enjoyment of her own residence, and the law does not require her to cease that enjoyment the moment the owner chooses to permit it to become danger- ous.  While the. approach is in the possession of the owner, the easement is a part of her own premises, and the tenant may still continue to use it in the exercise of reasonable care, to be determined in view of the extent and nature of the danger created by the owner's neglect or refusal to perform his duty, and her own right of enjoyment.  [Home Realty Co. v. Carius, supra; Looney McLean, 129 Mass. 33.]  If upon due notice or with knowledge of such dangerous condition he still fails to make the necessary repairs she is not bound to vacate the premises and resort to her suit in damages for relief, but may, in the exercise of such care as is indicated by the danger, continue to use the premises if practicable to do so with reasonable safety.  The landlord may not set a deadfall before the front door of his tenant, and claim exemption from damages for the consequent in-

jury on the sole ground that he had succeeded in making it dangerous to enter or leave by that route. In such a case the jury may weigh the need of the tenant in the same balance into which the cupidity of the owner has already been cast. It is unnecessary to express any opinion on the propriety of the remaining instructions.

The judgment of the Circuit Court for the City of St. Louis is reversed and the cause remanded for further proceedings in accordance with the principles herein stated. *Ragland* and *Small, CC.,* concur.

PER CURIAM:—The foregoing opinion of BROWN, C., is adopted as the opinion of the court. All of the judges concur.