254 S.W.2d 263 (1953)
O'NEILL
v.
SHERRILL et al.
No. 28533.
St. Louis Court of Appeals, Missouri.
January 20, 1953.
Rehearing Denied February 13, 1953.
*265 Oliver J. Miller of Lashly, Lashly & Miller, St. Louis, for appellants.
John S. Marsalek of Moser, Marsalek, Carpenter, Cleary & Carter, St. Louis, for respondent.
ANDERSON, Judge.
This is an action for damages for personal injuries alleged to have been sustained by plaintiff when she fell on the premises of defendants located at the southwest corner of Maryland and Euclid Avenues in the City of St. Louis. The trial below resulted in a verdict and judgment for plaintiff in the sum of $3600. From the judgment, defendants have appealed.
Plaintiff was employed as a fitter and seamstress by Gorman-Donnell, Inc., operators of a ladies' apparel store in defendants' building. Said building was an L-shaped structure, one part of which extended along the south side of Maryland Avenue, an east and west street, and the other along the west side of Euclid Avenue, which ran north and south, terminating at a public alley running east and west. Within the "L" was a concrete paved courtyard which was used in common by the various tenants of the building as a means of access to the public alley. The public alley was paved with asphalt and was slightly higher than the defendants' courtyard. The yard was separated from the alley by a concrete wall three or four feet in height, through which there was an opening three or three and one-half feet wide to permit access to and from the alley. The surface of the alley was approximately twelve inches above the surface of the courtyard, so that a person entering the courtyard from the alley was confronted with a step down of that distance.
Plaintiff was directed by her employer to enter and leave the store by the rear door which led into the courtyard in question; and, in gaining access to the courtyard from the alley, it was necessary for plaintiff to enter the courtyard through the opening above mentioned.
Immediately to the north of the entranceway through the concrete wall, at the place one would step upon, in stepping down from the alley to the courtyard, there was a rough, broken place in the surface of the concrete paving. The upper edge of the step was also badly cracked and broken. Describing this condition, plaintiff, on direct examination, testified that "the top of the step, as you step down, the top was all broken and this was broken as you stepped down onto the passageway, there was a hole in the concrete there. * * * Well, it might have been an inch deep, it might have been an inch and a half."
On cross-examination, plaintiff testified that the width and length of the broken area of the concrete was a little greater than the length of a lead pencil (exhibited to the witness by defendants' counsel), and was located in the center of the opening through the concrete wall. She also testified that one could avoid stepping onto the broken area by stepping down either to the east or west of it.
Plaintiff's son, Albert O'Neill, shortly after the accident, viewed the place where plaintiff fell. He testified:

*266 "Well, as you step down, I mean right at the edge of the, I guess you would call it the step from the alley, it's more or less a jagged edge, and then as you step down, I mean right where your feet would come down, there is like the concrete has been broken out, I mean something heavy dropped on it or something, I don't know, say just a hole maybe a foot in diameter, I guess.
"Q. How deep, to what extent would you estimate that place in the concrete was depressed below the surrounding concrete? A. Well, I would say a half an inch or an inch anyway.
"Q. And were the edges of the concrete there where it was broken, were they smooth, or was it rough and jagged? A. Rough and jagged, nothing smooth.
"Q. You say that place where it was broke was about how large? A. Well, * * * I would say about * * * ten inches, ten or twelve inches."
Myra Mason, a witness for plaintiff, testified:
"I saw the hole * * * it was from an inch to inch and a half deep, and it was all broken and jagged.
"Q. Were the edges of the concrete there in that depression smooth, even or were they jagged and rough edges? A. It was jagged and rough; it had been broken out."
Addison Hart, who was employed by defendants as maintenance man for the premises, testified that the broken area "was just a little chipped place, the finished surface was cracked. * * * I guess it would be three-quarters, half an inch, or three-quarters of an inch deep in that crack that shows there. It wouldn't be any deeper than three-quarters or half an inch deep, and it was about six or eight inches around. * * * That particular place been there from twelve to thirteen years, that spot there."
Plaintiff started to work for Gorman-Donnell, Inc., in February, 1949. She was injured on September 21, 1949. She used the rear entrance in question several times a day during the period she worked prior to the date of her accident, and was thoroughly familiar with this cracked place in the areaway. She stated that she considered the condition there dangerous and for that reason she would try to step beyond the broken area when entering defendants' premises. She further testified that on the morning she was injured
"as I stepped down I didn't clear all of that hole that morning; I caught my heel in the edge of it and it throwed me. * * * my foot just doubled in under me and I went down, all of my weight right onto my foot.

* * * * * *
"Q. Now, as I understand you, and if I don't say it right, why, you correct me, that on this occasion you came along there and turned around and started to step and you did step down and tried to step over it but didn't get quite over it? A. That's right.
"Q. * * * and your heel got caught on the rough area? A. Yes, sir. * * *
"Q. And that, as I understand it, was your right foot, wasn't it? A. That's right.
"Q. So that your left foot was on the step itself and your right went down like that? A. That's right."
The accident happened about 8:40 a. m. on a bright morning. Plaintiff had no difficulty in seeing the rough area at the time. As a result of the fall, plaintiff suffered a sprained ankle and a broken metatarsal bone in the foot.
Appellants assign as error the refusal of the trial court to sustain their motion to dismiss, submitted by them at the close of the whole case. In support of this contention, it is urged that said motion should have been sustained because: (1) the defect in question was trivial and not dangerous, and for that reason defendants were not guilty of negligence in permitting it to remain in said sidewalk; and (2) since plaintiff had full knowledge of the defect, no actionable negligence on the part of defendants was shown.
*267 In respect to the first point, our problem is to determine whether a jury could have reasonably found that the act of the defendants, in permitting the rough condition of the sidewalk to remain in the condition which the evidence showed it to be, subjected persons lawfully using the sidewalk to an unreasonable risk of bodily harm. In determining this question, no hard and fast rule can be applied. Each case must stand or fall on its own facts. Permitting a hole of a certain depth, or a rough area, to remain in a sidewalk, may or may not be evidence of negligence, depending upon all the facts and circumstances.
In the case at bar, there was a rough, jagged and depressed area at the bottom of a twelve inch step-down from the alley. The condition was such that one attempting to step over it, as plaintiff tried to do in this case, could, without fault, suffer a loss of balance and fail to execute the step as intended. We believe that it was for the jury to say whether the condition was so dangerous as to subject persons using the entry to an unreasonable risk.
Appellants' contention that no actionable negligence was shown, for the reason that plaintiff had full knowledge of the defect in question, is based upon the rule announced in the following cases: Vogt v. Wurmb, 318 Mo. 471, 300 S.W. 278; Main v. Lehman, 294 Mo. 579, 243 S.W. 91; Schmoll v. National Shirt Shops of Missouri, 354 Mo. 1164, 193 S.W.2d 605; Stoll v. First National Bank of Independence, 234 Mo.App. 364, 132 S.W.2d 676; and Mullen v. Sensenbrenner Mercantile Co., Mo.Sup., 260 S.W. 982. Said cases hold that an owner or possessor of land may not be held liable to his licensees, whether business visitors or gratuitous licensees, for bodily injuries sustained by them and caused by a dangerous condition of the premises, if said injured person knew of the condition and realized the risk involved. The right of such person to enter the land is derived solely from the possessor's consent, which he is free to give or withhold at will. Therefore, the one entering the land under such invitation is entitled to nothing more than knowledge of the dangerous condition which he may encounter, so that he may exercise an intelligent choice as to whether the advantage to be gained from accepting the invitation is sufficient to justify the risk which he knows is inseparable from it. Knowledge on the part of the invitee dispenses with the duty to warn, and where the evidence shows such knowledge, no breach of duty is shown; hence there is no actionable negligence.
This rule, however, does not apply where the relation of landlord and tenant obtains. Roman v. King, 289 Mo. 641, 233 S.W. 161, 25 A.L.R. 1263; Brewer v. Silverstein, Mo.Sup., 64 S.W.2d 289; and Coats v. Sandhofer, Mo.App., 248 S.W.2d 455. In such cases, the required standard of care to be exercised by the landlord toward a tenant, and those standing in his right, though defined as the exercise of ordinary care, affords greater protection in that actionable negligence may exist even though the injured party may be aware of the defect and its dangerous potentialities. This solicitude on the part of the courts in the interest of the tenant, and those on the premises in his right, springs from the nature of the relationship involved and the necessities of the case. In the balancing of convenience, it is thought undesirable to compel a tenant to abandon the use of that portion of the premises under the landlord's control which contains a dangerous defect, provided that in using it due care is exercised. The tenant has paid for the use of it and, under the decisions, he and his invitees may use it unless the defect is of such a dangerous character that no reasonable person in the exercise of due care would use it. Roman v. King, supra; Restatement of the Law of Torts, Vol. 2, Section 360.
Appellants contend that the trend is away from Roman v. King, supra, and cite and rely upon Horvath v. Chestnut Street Realty Co., Mo.App., 144 S.W.2d 165. The opinion in that case was by McCullen, J., and applied the doctrine that no actionable negligence is shown where the dangers are obvious or as well known to the person injured as they are to the landowner.
*268 The plaintiff in that case was injured while on a part of the premises over which the landlord retained control, and was there to transact business with a tenant. Under Roman v. King, supra, said plaintiff was entitled to the same protection as the tenant. It would seem, therefore, that the Horvath case is in conflict with the Roman case and should be and is overruled.
Gaffron v. Prudential Life Ins. Co., 238 Mo.App. 749, 187 S.W.2d 41, is also cited. That was an opinion by McCullen, J., in which the rule of Vogt v. Wurmb, supra, is approved. However, said rule was not involved in the Gaffron case, the holding being that no case for the jury was made because there was no showing that the defendant landlord had knowledge, either actual or constructive, of the unsafe condition of the premises. Said case should not be considered as an authority applying the doctrine of Vogt v. Wurmb, supra, to a case such as the one at bar.
In Waldmann v. Skrainka Const. Co., 289 Mo. 622, 233 S.W. 242, it was held that the plaintiff, injured when using a public sidewalk, was guilty of contributory negligence as a matter of law.
In Lenger v. Modern Recreations, Inc., Mo.App., 203 S.W.2d 100, there was no relation of landlord and tenant involved. The same is true of Beitch v. Central Terminal Co., Mo.App., 122 S.W.2d 94. In Burton v. Rothschild, 351 Mo. 562, 173 S.W.2d 681, the court held that there was no liability because the landlord did not have control over the common stairway, having leased the entire building to another.
As far as we can ascertain from our investigation of the authorities, there has been no deviation from the doctrine of the Roman case, supra. We are bound by the ruling in that case.
While the plaintiff's knowledge of the defective condition does not affect the wrongfulness of the lessor's conduct, it may be important in determining the issue of contributory negligence. In the case at bar, however, said issue was, in our judgment, for the jury. We cannot say, as a matter of law, that the risk to plaintiff was so great that she acted unreasonably in encountering it. In our opinion, the court did not err in overruling defendants' motion to dismiss.
What we have heretofore said disposes of appellants' assignment that the court erred in giving plaintiff's Instruction No. 1, and in refusing to give and read to the jury defendants' Instruction No. 6. The complaint in regard to plaintiff's Instruction No. 1 is on the same basis as the complaint made to the court's ruling with respect to the motion to dismissthat is, that no case was made.
By Instruction No. 6 defendants sought to have applied the law of Horvath v. Chestnut Street Realty Co., Mo.App., 144 S.W.2d 165. As heretofore pointed out, said case is in conflict with previous controlling decisions of our Supreme Court. To have given said instruction would have been erroneous under Roman v. King, supra.
Appellants next complain of the refusal of the trial court to give and read to the jury Instructions 7 and 8, requested by the defendants.
Instruction No. 7 charged that if the jury found that sidewalks with similar cracks and roughness were in safe daily use and were customarily furnished by ordinarily prudent householders under same or similar conditions, defendants were not guilty of negligence in permitting the use of the sidewalk in question and were under no duty to repair same.
Instruction No. 8 charged that defendants' sole duty was to provide a concrete sidewalk similar to that customarily provided in the community by ordinarily prudent householders under like conditions and circumstances. Said instruction then charged that if the sidewalk in question was as safe for use as those provided generally in the community under like conditions and circumstances by the ordinarily prudent householder, and that same could be used with reasonable safety by a person exercising ordinary care while so doing, the verdict should be for defendants.
We do not believe that the court committed reversible error in refusing the foregoing instructions. Both instructions were *269 an attempt to define negligence, yet in doing so defendants injected confusion into the case by authorizing the jury to compare the sidewalk in question with those in use in other parts of the community. In so doing the jury would have to decide whether those other sidewalks were sufficiently similar to warrant comparison, and whether the other owners, in maintaining them, were themselves in the exercise of ordinary care, thus injecting collateral issues into the case, of which there was no evidence.
Each of the essential elements necessary to be found by the jury as a prerequisite to a recovery in this case was fully submitted by other instructions; and such parts of Instructions No. 7 and No. 8 as were proper were submitted by Instruction No. 3, given at defendants' request.
By said Instruction No. 3 the jury were charged that "it was not the duty of the defendants to furnish a sidewalk that was absolutely smooth and absolutely free from all cracks, but only to furnish a sidewalk that an ordinarily careful pedestrian could use with reasonable safety, provided such pedestrian was exercising ordinary care while using the same for passageway. If, therefore, you find that the sidewalk mentioned in the evidence was such that could be so used by an ordinarily careful pedestrian, while using ordinary care in its use, then plaintiff is not entitled to recover."
Appellants next complain that the court erred in refusing to permit Addison Hart, a witness for defendants, to testify as to the number of places similar to the one in question that he observed in the sidewalk that morning on his way to the courthouse from Seventh and Olive Streets. This evidence was clearly inadmissible for the reason that it would confuse the issues. It would also be unfair to the other party to thus broaden the scope of the trial. Wigmore on Evidence (3rd Ed.), Vol. 1, sec. 29a, Vol. II, secs. 443, 444.
Finally, it is urged that the court erred in refusing to sustain defendants' objection to a certain portion of the final argument of plaintiff's counsel. The argument complained of was provoked by remarks made by defendants' counsel during his argument, which remarks were as follows:
"Now remember, that so far as you are concerned, if you own a house, some day we all hope to own one, with a sidewalk, and you have a cracked sidewalk, which is almost inevitable in this climate where we have frost followed by hot weather, the Court doesn't tell you and the law doesn't tell you that the minute you get a crack in that sidewalk you have to dig it up and build a new one, because that's the only thing you can do in this neighborhood that would cure a condition like that. You might say you could grout a little stuff in there but the next frost will take it right out; you can't do that and you know it. You men who know something about concrete know that. So the only way you could fix that sidewalk would be to take it all up and put it down again fresh, and then the very next tenant that brings a heavy case in there will crack it for you again after the next frost and then you will have to take it up and put it back down again. Now, that isn't the law, and the law doesn't tell you you have to do that."
The reply of plaintiff's counsel to the foregoing argument was as follows:
"He says that if you put in another piece of concrete it would only be broken again. Just a piece of concrete in there from that expansion joint over there and to fix that thing up and put it in proper conditionif they had just taken a little bit of the rent that they got from Gorman-Donnell and spent it to fix up that sidewalk, Mrs. O'Neill would have a perfectly good ankle today and she would have no lawsuit.

"Mr. Miller: Your Honor, I have to object to the argument that the plaintiff is entitled to recover because it costs very little money to replace the sidewalk; I object to that.
"The Court: Overruled."
*270 The basis of appellants' complaint in this court is that plaintiff's counsel made improper reference to the wealth of the defendants.
It will be seen that defendants' counsel in his argument was trying to leave the impression with the jury that defendants here were in the same position as a home owner who, after a hard struggle, had finally acquired a home, and that to expect him to make repairs would be an undue hardship on him. It was an appeal to the sympathy of the jury to excuse defendants from this intolerable burden. The argument provoked the reply which was calculated to neutralize the effect of the plea of defendants' counsel. Having provoked the argument, defendants are in no position to complain of it. At any rate, the matter was within the trial court's discretion. He was in the best position to measure the possible effect of appellants' argument upon the jury, and whether respondent's reply was warranted. He was also in a position to determine whether the argument would have any substantial bearing on the result of the trial. We find no error in the court's ruling.
Finding no error in the record, the judgment appealed from is affirmed.
BENNICK, P. J., and ARONSON, J., concur.