Rel: May 24, 2024

**Notice:** This opinion is subject to formal revision before publication in the advance sheets of **Southern Reporter**.  Readers are requested to notify the **Reporter of Decisions**, Alabama Appellate Courts, 300 Dexter Avenue, Montgomery, Alabama 36104-3741 ((334) 229-0650), of any typographical or other errors, in order that corrections may be made before the opinion is printed in **Southern Reporter**.

# SUPREME COURT OF ALABAMA

## OCTOBER TERM, 2023-2024

_____

### SC-2023-0537
_____

**Ex parte Housing Authority of the City of Talladega**

**PETITION FOR WRIT OF CERTIORARI
TO THE COURT OF CIVIL APPEALS**

**(In re: Harold Wallace**

**v.**

**The Housing Authority of the City of Talladega)**

**(Talladega Circuit Court: CV-18-900509;
Court of Civil Appeals: 2210486)**

COOK, Justice.

Harold Wallace fell while walking down the back-porch stairs to his apartment. In December 2018, he filed a complaint in the Talladega Circuit Court against his landlord, the Housing Authority of the City of Talladega ("the Housing Authority"). Wallace asserted claims of negligence and wantonness because the handrails for those stairs were missing when he fell. The Housing Authority moved for a summary judgment, arguing that the lack of handrails was an "open and obvious" danger and that Wallace had conceded in his deposition that the lack of handrails was known by him. The trial court agreed and granted the Housing Authority's motion for a summary judgment. Shortly afterward, Wallace appealed to the Court of Civil Appeals.

In a 3-2 decision, the Court of Civil Appeals reversed the trial court's summary judgment in favor of the Housing Authority. See Wallace v. Housing Auth. of Talladega, [Ms. 2210486, Apr. 14, 2023] ____ So. 3d ____ (Ala. Civ. App. 2023). The Housing Authority then filed an application for a rehearing, which the Court of Civil Appeals overruled, without an opinion.

The Housing Authority then petitioned this Court for certiorari review, arguing that the Court of Civil Appeals' decision conflicts with

this Court's prior decision in <u>Daniels v. Wiley</u>, 314 So. 3d 1213 (Ala. 2020). In <u>Daniels</u>, we affirmed a summary judgment for the defendant landlord after concluding that the landlord had no duty to the plaintiff tenant with respect to risks created by the muddy condition of a sidewalk within her apartment complex because the danger was "open and obvious." We granted certiorari review to determine whether the Court of Civil Appeals' decision in this case does in fact conflict with our decision in <u>Daniels</u>.

As explained below, after careful review, we conclude that the Court of Civil Appeals' decision does not conflict with <u>Daniels</u>, and we thus affirm. We issue this opinion primarily to clarify the scope and applicability of our decision in <u>Daniels</u>, including how the "open and obvious" doctrine applies in the landlord-tenant context.

<u>Facts and Procedural History</u>

After suffering a stroke in 2015, Wallace applied in 2016 to the Housing Authority for a transfer to a handicap-accessible apartment in the Knoxville Homes apartment complex where his elderly mother lived. The Housing Authority approved Wallace's request and authorized his transfer, subject to the availability of an apartment.

In December 2016, Wallace began preparing to move into his new apartment at Knoxville Homes. Wallace would later testify during a deposition that the Housing Authority had informed him that his Knoxville Homes apartment had been inspected and was ready for him to move in.

According to Wallace, however, when he arrived to move into the apartment, he discovered that it was not ready. He stated that the apartment was dirty, that there were indications of roach and rat issues, that the floors needed additional work, that the cabinet under the sink had a hole that needed repair, and that the handrails around the back and front porches and the back-porch stairs had been removed and not replaced. Because he could not return to his former apartment, Wallace proceeded to move into his Knoxville Homes apartment despite those issues.

When asked during his deposition what it was about the apartment that made him think that it was not ready, Wallace stated:

> "It didn't have no rail. They cut the rails and -- they cut the rails off. But I was told it [was] going to be fixed within a day or two. That's why I move in, because I thought they going to fix it and it's been three years."

Although a Housing Authority employee told Wallace that the Housing Authority would fix everything within a week, Wallace stated that it did not do so.

Wallace also stated that from the day he moved into his Knoxville Homes apartment on December 16, 2016, until his fall on December 29, 2016, he had three conversations with employees of the Housing Authority about installing the porch and stair railings. According to Wallace, the employees of the Housing Authority repeatedly told him that the railings would be reinstalled.

Wallace stated that, on the morning of December 29, 2016, he fell while descending the back-porch stairs. Although he was using his cane to help him keep his balance, Wallace stated that he nevertheless lost his balance and fell to the concrete sidewalk below. Wallace attributed his fall to the lack of a railing. According to Wallace, as a result of the fall, he injured his right shoulder, his knees, and perhaps his neck.

On December 17, 2018, Wallace sued the Housing Authority. Wallace alleged that his injuries from the fall were the result of the negligence or wantonness of the Housing Authority or the person or legal entity who was responsible for the maintenance of his Knoxville Homes

5

apartment.

On October 1, 2021, the Housing Authority filed a motion for a summary judgment. Relying on this Court's prior decision in Daniels, supra, the Housing Authority argued that it was entitled to a summary judgment because the absence of the back-porch-stair railing was an "open and obvious" danger of which Wallace was aware. As a result, the Housing Authority argued that it owed no duty to Wallace. In support of its motion, the Housing Authority included excerpts from Wallace's deposition testimony.

Wallace opposed the Housing Authority's motion for a summary judgment. In support of his opposition, Wallace submitted his entire deposition testimony.

Following a hearing on the Housing Authority's motion, the trial court entered a summary judgment in its favor based on the authority in Daniels. As stated previously, Wallace then appealed the trial court's decision to the Court of Civil Appeals.

The Court of Civil Appeals, after reviewing the record, held that the trial court had erred in relying on Daniels in determining that the Housing Authority was entitled to a summary judgment. Thus, the Court

of Civil Appeals reversed the trial court's summary judgment in favor of

the Housing Authority and remanded the case for further proceedings.

This petition for a writ of certiorari followed.

## Standard of Review

"'"On certiorari review, this Court accords no presumption of correctness to the legal conclusions of the intermediate appellate court. Therefore, we must apply de novo the standard of review that was applicable in the Court of Civil Appeals."'"

Ex parte S.L.M., 171 So. 3d 673, 677 (Ala. 2014) (quoting Ex parte Helms,

873 So. 2d 1139, 1143 (Ala. 2003), quoting in turn Ex parte Toyota Motor

Corp., 684 So. 2d 132, 135 (Ala. 1996)).

"'The standard of review applicable to a summary judgment is the same as the standard for granting the motion ....' McClendon v. Mountain Top Indoor Flea Market, Inc., 601 So. 2d 957, 958 (Ala. 1992).

"'A summary judgment is proper when there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. Rule 56(c)(3), Ala. R. Civ. P. The burden is on the moving party to make a prima facie showing that there is no genuine issue of material fact and that it is entitled to a judgment as a matter of law. In determining whether the movant has carried that burden, the court is to view the evidence in a light most favorable to the nonmoving party and to draw all reasonable inferences in favor of that party. To defeat a properly supported summary

judgment motion, the nonmoving party must present "substantial evidence" creating a genuine issue of material fact -- "evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved." Ala. Code 1975, § 12-21-12; West v. Founders Life Assurance Co. of Florida, 547 So. 2d 870, 871 (Ala. 1989).'

"Capital Alliance Ins. Co. v. Thorough-Clean, Inc., 639 So. 2d 1349, 1350 (Ala. 1994). Questions of law are reviewed de novo. Alabama Republican Party v. McGinley, 893 So. 2d 337, 342 (Ala. 2004)."

Pritchett v. ICN Med. All., Inc., 938 So. 2d 933, 935 (Ala. 2006).

Discussion

In its petition, the Housing Authority alleges that the Court of Civil Appeals' decision conflicts with this Court's prior decision in Daniels, supra, which the Housing Authority cites for the proposition that it had no duty to warn of or make safe the condition of the back-porch steps because, it says, the danger posed by that condition was "open and obvious." According to the Housing Authority, the Court of Civil Appeals improperly ignored our holding in Daniels when it concluded that §§ 360 and 361 of the Restatement (Second) of Torts (Am. L. Inst. 1965) ("the Second Restatement") require landlords/lessors to protect tenants/lessees

8

from even "open and obvious" dangers in certain circumstances.

Because we conclude that the Court of Civil Appeals applied the appropriate legal principles, we affirm. However, in light of the apparent confusion over the scope and applicability of Daniels, we issue this opinion to clarify the proper interpretation of that decision.

I. The Restatement Principles

Our Court has sometimes cited different provisions of the Restatements of Torts when discussing how the "open and obvious" doctrine applies to premises-liability claims, even in the landlord-tenant context. Thus, before turning to this Court's decision in Daniels, we believe it helpful to provide a background on the relevant provisions of the Restatement (First) of Torts (Am. L. Inst. 1934) ("the First Restatement") and the Second Restatement and to discuss the Alabama caselaw applying those provisions.

A. A Landlord's Liability to Tenants Under the First Restatement

Section 356 of the First Restatement, which falls within a topic titled "Liability of Lessors of Land to Persons Thereon," see First Restatement Chapter 13, Topic 3 (emphasis added), states the general

rule governing a landlord's liability to tenants for dangerous conditions that exist when a lease begins. That rule provides that, "[e]xcept as stated in §§ 357 to 362, a lessor of land is not liable for bodily harm caused to his lessee or others upon the land with the consent of the lessee or a sub-lessee by any dangerous condition whether natural or artificial which existed when the lessee took possession." First Restatement § 356 (emphasis added).

However, there are exceptions to this general rule governing a landlord's liability to a tenant. Specifically, §§ 360 and 361 of the First Restatement set forth two such exceptions for tenants injured on certain parts of the land over which the landlord retained control. The exception in § 360 of the First Restatement states that

> "[a] possessor of land, who leases a part thereof and retains in his own possession any other part which the lessee is entitled to use as appurtenant to the part leased to him, is subject to liability to his lessee and others lawfully upon the land with the consent of the lessee or a sub-lessee for bodily harm caused to them by a dangerous condition upon that part of the land retained in the lessor's control, if the lessor by the exercise of reasonable care could have discovered the condition and the unreasonable risk involved therein and could have made the condition safe."

(Emphasis added.)

Crucially, Comment a. to § 360 makes clear that the exception "applies to subject the lessor to liability <u>irrespective of whether the lessee or those upon the land in his right know or do not know of the dangerous condition</u>." (Emphasis added.) Thus, the <u>First Restatement</u> recognizes that a landlord owes a duty to protect a tenant from even an "open and obvious" danger when that danger exists on a part of the premises (1) over which the landlord retained control and (2) that a tenant "is entitled to use as appurtenant to the part leased to him [(e.g., stairs or elevators[1])]." <u>First Restatement</u> § 360.

Comment a. to § 360 further contemplates that a

> "lessee's knowledge <u>may</u> … put him in … <u>contributory fault</u>" and states that "<u>unless the danger is so great that it is unreasonable</u> for the licensee to encounter it in view of the purpose of his visit or if knowing of the dangerous condition he fails to exercise that caution which a reasonable man would under the circumstances, <u>the lessor is liable to him notwithstanding his knowledge of the actual conditions</u>."

---

[1]Because "[t]he Housing Authority made no attempt to argue and show that no factual dispute existed as to the status of the back-porch stairs" before the trial court in this case, <u>Wallace</u>, ____ So. 3d at ____, that issue was not litigated, and the Court of Civil Appeals never actually determined whether the principles set forth in § 360 should apply to that portion of the property. We similarly do not address whether this Court has adopted the Comments to § 360 setting forth examples of parts of the land that a tenant "is entitled to use as appurtenant to the part leased to him."

11

(Emphasis added.) In other words, under § 360, the "open and obvious" nature of a condition may be considered in determining whether a plaintiff was contributorily negligent and may bar recovery for a plaintiff who unreasonably encounters a known danger. The existence of an "open and obvious" danger does not, however, categorically relieve a landlord of his or her duty of care to tenants injured under the circumstances set forth in § 360.

Section 361 of the First Restatement provides another exception to the "open and obvious" doctrine and explains that

> "[a] possessor of land, who leases a part thereof and retains in his own control any other part which is necessary to the safe use of the leased part, is subject to liability to his lessee and others lawfully upon the land with the consent of the lessee or a sub-lessee for bodily harm caused by a dangerous condition upon that part of the land retained in the lessor's control, if the lessor by the exercise of reasonable care
>
> > "(a) could have discovered the condition and the risk involved, and
> >
> > "(b) could have made the condition safe."

(Emphasis added.)[2] Comment a. to § 361 states that the foregoing rule

_____

[2]Comment b. to § 361 provides examples of parts of the land that are "necessary to the safe use of the leased part" and explains as follows:

12

"applies <u>irrespective of whether the lessee</u> or his licensees coming in his right upon that part of the land leased to him, <u>know or could, by the exercise of reasonable care, discover</u> the dangerous condition maintained by the lessor upon that part of the land maintained within his own control. <u>As to the effect of the knowledge of the lessee and others entering upon the land with his consent, see § 360, Comment a.</u>"

(Emphasis added.) As with § 360, the "open and obvious" doctrine does not negate a landlord's duty of care to tenants under § 361. See Comment a. to § 361 ("As to the effect of the knowledge of the lessee and others entering upon the land with his consent, see § 360, Comment a."); Comment a. to § 360 ("[T]he lessor is liable to [a lessee] notwithstanding [the lessee's] knowledge of the actual conditions."). Similarly, the "open and obvious" nature of danger may properly be considered as part of the contributory-negligence analysis. Id.

Thus, under the traditional common-law principles of premises

---

"The rule stated in this Section applies to the maintenance of walls, roofs, and foundations of an apartment house or office building. It applies also to any other part of the land, the careful maintenance of which is essential to the safe use of the rooms or offices or portion of land leased to the various lessees, such as the central heating, lighting, or water system."

liability embodied in the First Restatement, the openness and obviousness of a danger does not nullify a landlord's duty to protect a tenant, in certain circumstances, from dangerous conditions on parts of the land over which the landlord retained control, subject to the defense of contributory fault for the tenant's failure to "exercise that caution which a reasonable man would under the circumstances." Comment a. to § 360.

However, to the extent that a tenant could be argued in some circumstances and some locations to be only a "gratuitous licensee" or a "business visitor," the principle set forth in § 340 of the First Restatement may instead apply.[3] Section 340 provides the general rule for "open and obvious" dangers and states that landowners do not owe "licensees, whether business visitors or gratuitous licensees," a duty of care regarding dangerous conditions if the licensees "know of the condition

---

[3]As explained below, some Alabama caselaw has treated tenants, in certain circumstances or when in certain locations, as licensees or invitees. See, e.g., Shelton v. Boston Fin., Inc., 638 So. 2d 824, 825 (Ala. 1994) (plurality opinion) ("With respect to the common areas of an apartment complex, a tenant has the same legal rights as an invitee.").

14

and realize the risk involved therein."[4]

B. The Second Restatement's Position on "Open and Obvious" Dangers

The Second Restatement was published in 1965. Sections 360 and 361 of the Second Restatement are virtually identical to §§ 360 and 361

_____

[4]The First Restatement, published in 1934, embodies the traditional "no duty" rule of the "open and obvious" doctrine. See Ann K. Dittmeier, Premises Liability: The Disappearance of the Open and Obvious Doctrine, 64 Mo. L. Rev. 1021, 1025 (1999) (explaining that the First Restatement reflects the common-law "no duty" rule with respect to "open and obvious" dangers). Section 340 is entitled "General Liability of Possessors of Land to Licensees, Whether Business Visitors or Gratuitous Licensees," and states the rule as follows:

> "A possessor of land is not subject to liability to his licensees, whether business visitors or gratuitous licensees, for bodily harm caused to them by any dangerous condition thereon, whether natural or artificial, if they know of the condition and realize the risk involved therein."

(Emphasis added.)

In contrast to §§ 360 and 361, § 340 of the First Restatement does not include the additional requirement that the licensee be contributorily negligent for a landowner to avoid liability. However, Comment a. to § 340 does acknowledge that some exceptions to the "no duty" rule in § 340 for "open and obvious" dangers do exist. For instance, that comment states that the rule set forth in § 340 does not apply to "persons who enter land of another under a privilege which is independent of the consent of the possessor …, as where a patron of a public utility enters land in its possession seeking its services to which, as a member of the public, he is entitled (see § 347, Comment a)." Comment a. to § 340.

of the First Restatement. Indeed, as the Court of Civil Appeals correctly noted in its opinion, "substantially the same principles are present in the comparable exceptions as to a landlord's duty discussed in the Restatement (First) of Torts §§ 357-62 (Am. L. Inst. 1934), including, in pertinent part, the exceptions described in §§ 360-61 of the Restatement (Second) of Torts." Wallace, ___ So. 3d at ___.

However, by adopting § 343A, the Second Restatement did relax the general rule, embodied in § 340 of the First Restatement, that applies to "invitees" (or "business visitors") injured as a result of "open and obvious" dangers.[5] Section 343A, which replaced § 340 of the First Restatement, provides, in pertinent part:

> "(1) A possessor of land is not liable to his invitees for physical harm caused to them by any activity or condition on the land whose danger is known or obvious to them, unless the possessor should anticipate the harm despite such knowledge or obviousness."

_____

[5]In contrast to the First Restatement, the Second Restatement distinguishes between the general duty owed to licensees and "invitees" (a category akin to "business visitors" under the First Restatement) in the case of "open and obvious" dangers. The Second Restatement defines an "invitee" as "either a public invitee or a business visitor." § 332. A "business visitor," in turn, is defined as "a person who is invited to enter or remain on land for a purpose directly or indirectly connected with business dealings with the possessor of the land." Id.

(Emphasis added.) See also Michalski v. Home Depot, Inc., 225 F.3d 113, 118-19 (2d Cir. 2000) (noting that, in response to widespread backlash to the "availability of the open and obvious doctrine as a complete and total defense to premises liability," the Second Restatement "adopted a different view, relating the liability of landowners for harm caused by obvious dangers to the foreseeability of that harm"). Thus, under § 343A, a landowner owes no general duty to protect invitees from "open and obvious" dangers "unless the possessor [or landowner] should anticipate the harm despite such knowledge or obviousness." (Emphasis added.)

## C. Alabama Caselaw

In its opinion, the Court of Civil Appeals emphasized that, although our caselaw rejects § 343A of the Second Restatement's "more liberal approach" as to a landowner's general duty regarding "open and obvious" dangers, Wallace, ____ So. 3d at ____, the specific rules relating to landlords set forth in §§ 360 and 361 of both the First Restatement and the Second Restatement continue to reflect a "proper statement of Alabama law." Id. As discussed below, we agree with the Court of Civil Appeals' characterization of our controlling precedent.

17

1. Alabama Courts Apply the General, Traditional Rule of the "Open and Obvious" Doctrine -- Rejecting § 343A's Applicability to Invitees

This Court has repeatedly affirmed that, "'<u>as a general rule</u>, an invitor will not be liable for injuries to an invitee resulting from a danger which was known to the invitee or should have been observed by the invitee in the exercise of reasonable care.'" <u>Edwards v. Hammond</u>, 510 So. 2d 234, 236 (Ala. 1987) (quoting <u>Quillen v. Quillen</u>, 388 So. 2d 985, 989 (Ala. 1980) (plurality opinion)) (emphasis omitted); <u>see</u> <u>also</u> <u>Lamson & Sessions Bolt Co. v. McCarty</u>, 234 Ala. 60, 63, 173 So. 388, 391 (1937); <u>Sloss Iron & Steel Co. v. Tilson</u>, 141 Ala. 152, 161, 37 So. 427, 429 (1904). Thus, we have adopted the general rule set forth in § 340 of the <u>First Restatement</u>, which provides that the openness and obviousness of a dangerous condition relieves landowners of a duty of care to "gratuitous licensees" and "business visitors" (or "invitees") whose privilege to enter the land depends on the landowner's consent.

We acknowledge that this Court appeared to briefly deviate from this traditional formulation of the "open and obvious" doctrine when, in 1989, we began relying on § 343A of the <u>Second Restatement</u> in several decisions concerning premises liability. <u>See</u>, <u>e.g.</u>, <u>Terry v. Life Ins. Co. of</u>

18

Georgia, 551 So. 2d 385, 386 (Ala. 1989), Campbell v. Valley Garden Apartments, 600 So. 2d 240 (Ala. 1992), and Sisk v. Heil Co., 639 So. 2d 1363, 1365 (Ala. 1994).

However, we clearly returned to our former position when, in Ex parte Gold Kist, Inc., 686 So. 2d 260, 261 (Ala. 1996), and Sessions v. Nonnenmann, 842 So. 2d 649 (Ala. 2002), we expressly rejected the principle set forth in § 343A. In Gold Kist,

> "[the plaintiff], an employee of the United States Department of Agriculture ('USDA'), was injured while working at her job when she slipped in water, grease, and other substances that had accumulated on the floor of [the defendant]'s poultry processing plant. The USDA had an office and a break room at [the defendant's] plant to facilitate the inspection of poultry. [The plaintiff] had been working at the plant for nine months before the accident. In the accident she injured her back; she sued, alleging that the accident was caused by an unsafe or hazardous condition created by [the defendant]."

686 So. 2d at 261. The trial court instructed the jury that the plaintiff "could not recover if the condition that caused the accident was open and obvious," and the jury returned a verdict in favor of the defendant. Id. On appeal to this Court, the plaintiff, relying on § 343A of the Second Restatement, argued "that the trial court should have further explained that a possessor of land is not liable for harm caused by open and obvious

19

danger 'unless the possessor should anticipate the harm despite such knowledge or obviousness.'" Id. This Court, however, was unpersuaded by the plaintiff's argument and concluded that § 343A was not "a correct statement of the law relating to the liability of a possessor of land." Id.

The relevant holding in Sessions similarly concerned whether a possessor of land had a general duty to protect invitees from "open and obvious" dangers. In Sessions, the plaintiff, a plumbing subcontractor, sued the defendant, a general contractor, after the plaintiff "fell through an opening for a stairwell in the second floor of the building the parties were constructing." 842 So. 2d at 651. On appeal, this Court noted that there was "undisputed evidence that the hazard of the unguarded stairwell was open and obvious," id., and -- relying on Gold Kist -- concluded that the openness and obviousness of the hazard "negate[d] any general duty in the defendant general contractor to barricade the stairwell or to warn the subcontractor plaintiff of the hazard." Id. at 654 (emphasis added).

Thus, despite the confusion created by some of our prior caselaw's reliance on § 343A of the Second Restatement, this Court -- when applicable -- continues to apply the traditional, and general, rule of

liability with regard to "gratuitous licensees" and "business visitors" (or "invitees") set forth in § 340 of the First Restatement.

>2. Alabama Courts Recognize a Landlord's Common-Law Duty to Tenants With Regard to "Open and Obvious" Conditions in Certain Circumstances

Importantly, cases dealing with the general liability of landowners to licensees or invitees do not ordinarily govern a landlord's specific liability to tenants injured on certain parts of the land over which the landlord retained control. As the Court of Civil Appeals' decision explains, in contrast to § 343A -- which has "no foundation in Alabama law" -- this Court has consistently embraced the specific rules set forth in §§ 360 and 361 of the First Restatement and the Second Restatement as "the long-standing law in Alabama." Wallace, ___ So. 3d at ___.

For example, in 1936, we observed, in Prudential Insurance Co. of America v. Zeidler, 233 Ala. 328, 171 So. 634 (1936),

> "that the general authorities -- state and federal -- in this jurisdiction are to the effect that, 'to the rule that a tenant takes the leased premises subject to defects not amounting to a trap, there is an exception to the effect that the owner of a building who leases it to different tenants, and expressly or impliedly reserves portions thereof, such as halls, stairways, porches, walks, etc., for the use in common of different tenants, is liable for any personal injury to a tenant, or a person in privity with a tenant, due to defects in the portion

> of the leased premises of which the landlord so retains control, provided the defect is ascribable to the negligence of the landlord, and the tenant or person injured is not guilty of contributory negligence.'"

233 Ala. at 333, 171 So. at 638 (citing Annotation, Liability of Landlord for Personal Injuries Due to Defective Halls, Stairways, And the Like, For Use of Different Tenants, 25 A.L.R. 1273 (1923) (discussing Roman v. King, 289 Mo. 641, 233 S.W. 161 (1921)), and Mudd v. Gray, 200 Ala. 92, 75 So. 468 (1917)) (emphasis omitted; emphasis added).[6] This view is entirely consistent with the principles reflected in § 360 of the First

---

[6]Both Roman and Mudd are consistent with § 360. For instance, in Roman, the Missouri Supreme Court embraced the proposition that the

> "'[m]ere continued use of a common passageway, after knowledge of its dangerous condition, is not of itself conclusive evidence of a lack of due care on the part of the tenant, since such knowledge does not require the tenant to desist from using same in a careful manner, nor render the careful use of same contributory negligence.'"

289 Mo. 641, 233 S.W. at 165 (quoting Home Realty Co. v. Carius, 189 Ky. 228, 224 S.W. 751, 752 (1920)).

In Mudd, this Court stated that "[a] reading of the authorities would clearly disclose that the obligation of the landlord … as to keeping in repair the stairway used in common by the different tenants and controlled by the landlord, extended not only to the tenant, but to his invitees, whether expressly or by implication." 200 Ala. at 94, 75 So. at 470.

Restatement and the Second Restatement.

More recently, in Hancock v. Alabama Home Mortgage Co., 372 So. 2d 858, 858 (Ala. 1979) ("Hancock I"), we recognized that the rule set forth in § 360 of the Second Restatement "has long been the rule in this State." Applying the principles in § 360, we reversed the trial court's summary judgment in favor of the defendant landlord and remanded the case for further proceedings. Id. In a subsequent appeal, we explained that the rule concerning a landlord's liability with respect to certain areas over which the landlord retained control, as described in Zeidler, is "imposed so that 'tenants and their invitees may have egress and ingress without unnecessary danger in the due exercise of the privilege or necessity of going to and from such apartment house or office building.'" Hancock v. Alabama Home Mortg. Co., 393 So. 2d 969, 970 (Ala. 1981) ("Hancock II") (quoting Preston v. LaSalle Apartments, 241 Ala. 540, 543, 3 So. 2d 411, 413 (1941)).

Likewise, our Court has expressly affirmed the rule set forth in § 361. See Chambers v. Buettner, 295 Ala. 8, 12, 321 So. 2d 650, 653 (1975).

Again, in Coggin v. Starke Bros. Realty Co., 391 So. 2d 111, 113

23

(Ala. 1980), a plurality of this Court affirmed the rules set forth in §§ 360 and 361. In that case, the plaintiff tenant slipped and fell down the back steps to her apartment that "were a portion of the common area of the rental property used by [the plaintiff tenant] and the other tenants." Id. at 112. The plaintiff tenant admitted that she had noticed "that the back steps leading up to her dwelling were 'steep and narrow' and lacked a handrail" before her fall. Id. The trial court entered a summary judgment in favor of the defendant landlord. This Court reversed and concluded that the "evidence, including evidence bearing on the defense of 'open and obvious danger,' viewed in light of the applicable substantive law, presents genuine issues of material fact which [the plaintiff tenant] is entitled to have submitted, pursuant to appropriate instructions, for a jury's determination." Id. at 113.[7] As the Court of Civil Appeals' decision

---

[7]And there are other Alabama cases applying the principles from §§ 360 and 361. For instance, in Berness v. Regency Square Assocs., Ltd., 514 So. 2d 1346, 1348 (Ala. 1987), we similarly reversed a trial court's summary judgment in favor of a defendant landlord after explaining that, in contrast to our decisions applying the general "open and obvious" rule, the plaintiff tenant's knowledge of the dangerous condition in that case raised a factual question regarding whether she was contributorily negligent rather than a legal question involving the defendant landlord's "threshold duty to warn" of the danger posed by the dangerous condition.

24

correctly notes, the present case "factually resembles <u>Coggin</u> regarding the type of danger at issue -- a missing stair handrail leading to the leased premises …." <u>Wallace</u>, ___ So. 3d at ___.

Thus, when applicable, this Court has repeatedly, and expressly, affirmed the substantive propositions in §§ 360 and 361 of the <u>First Restatement</u> and the <u>Second Restatement</u>.

II. <u>This Court's Decision in </u>Daniels

With the above background in mind, we now turn to this Court's decision in <u>Daniels</u>, <u>supra</u>. In <u>Daniels</u>, the plaintiff, a resident of an apartment complex owned and managed by the defendants, was "walking on the sidewalk from her apartment to the mail kiosk for her building to retrieve her mail." 314 So. 3d at 1215. According to the plaintiff, because of rain earlier that day, mud had accumulated on the sidewalk. <u>Id.</u> The

_____

In <u>Nayman v. Tracey</u>, 599 So. 2d 604, 605 (Ala. 1992), we again emphasized that the parties in that case were "related as landlord and tenant and that [the plaintiff tenant] contend[ed] that the area where he was injured was a 'common' area over which [the defendant landlord] retained control." Accordingly, we reversed a trial court's summary judgment in favor of defendant landlord after concluding that §§ 360 and 361, as well as our prior caselaw, recognize a landlord's duty to maintain the common areas of an apartment complex in a reasonably safe condition in certain circumstances. <u>Id.</u> at 606-07.

plaintiff alleged that, when she stepped off the sidewalk curb, she slipped and fell -- breaking both of her knees. Id. The plaintiff sued, alleging that the defendants "had breached duties 'to ensure that the premises of the apartment complex were reasonably safe for tenants' and 'to not create and/or allow dangerous conditions on the premises of the apartment complex.'" Id.

The defendants moved for a summary judgment, arguing, among other things, that "they were not liable for [the plaintiff's] injuries because, they argued, the alleged danger created by mud was open and obvious." Id. In support of their summary-judgment motion, the defendants attached the affidavit of the apartment complex's community manager. Id. at 1216. In that affidavit, the community manager testified

> "that a diligent search had been conducted of the records of the apartment complex and that no record was located concerning complaints about mud accumulating on the sidewalk near the area where [the plaintiff] fell or other complaints regarding the general condition of the sidewalk before [the plaintiff's] fall …. According to [the community manager], neither [the plaintiff] nor any other tenant had reported a problem with the condition of the sidewalk to her. [The community manager] explained that, in addition to walking on the sidewalk to retrieve the mail, [the plaintiff] could walk on the street, walk through a breezeway, or drive her car to the mail kiosk and park in front of it in one of the spaces provided for that purpose."

26

Id. (emphasis added). The defendants additionally submitted "deposition testimony from [the plaintiff] regarding her knowledge of the condition of the sidewalk, her navigation of the sidewalk, and the circumstances surrounding her accident." Id.

In response, the plaintiff acknowledged that she was aware of "the danger created by the accumulated mud on the sidewalk and curb." Id. at 1217. However, she argued that this knowledge did not foreclose her negligence and wantonness claims because the defendants "should have anticipated her being injured by the danger because, she said, they did not provide her with a 'reasonable and safe alternative' means for retrieving mail on a rainy day." Id. Further, she argued that the defendants were "liable for her injuries because, she said, they knew or should have known about the danger created by the mud on the sidewalk, which, she said, was 'plainly visible.'" Id. In support of this proposition, the plaintiff cited Campbell, supra, which in turn quoted § 343A of the Second Restatement and held that a plaintiff's knowledge of the slippery condition of a sidewalk did not bar her negligence claim. Daniels, 314 So. 3d at 1217; Campbell, 600 So. 2d at 241-42.

The defendants replied, arguing that "Campbell had been overruled by Ex parte Gold Kist, Inc., 686 So. 2d 260, 261 (Ala. 1996) (declining to adopt Restatement (Second) of Torts § 343A (1965), which was quoted in Campbell ....), and that, consequently, [the plaintiff's] reliance on Campbell [was] misplaced." Daniels, 314 So. 3d at 1218 (footnote omitted).

The trial court agreed with the defendants and entered a summary judgment in their favor. On appeal, we affirmed the trial court's judgment. In our decision, we noted that, in Gold Kist and Sessions, this Court had "'decline[d] to adopt § 343A as a correct statement of the law relating to the liability of a possessor of land.'" Id. at 1222 (quoting Gold Kist, 686 So. 2d at 261). We further stated that, "[t]o the extent that … Campbell, supra[,] … and other cases citing, quoting, and/or applying the Restatement (Second) of Torts § 343A may hold otherwise, they are overruled." Id. at 1225.

As to the facts in Daniels, we noted (1) that it was undisputed that the condition of the muddy sidewalk and curb created an "open and obvious" danger and (2) that the plaintiff admitted "that she appreciated the danger created by the mud when she testified that she typically

28

avoided the danger by hopping over the mud." Id. (emphasis added). Therefore, we determined that the defendants did not owe the plaintiff "any general duty to mark the sidewalk and curb where the mud had accumulated or to warn [the plaintiff] of the danger …." Id. (emphasis added). We also held that the plaintiff had failed to demonstrate that the defendants had "breached a special duty, as distinguished from the general duty … already discussed." Id. Specifically, we held that, because the plaintiff had failed to cite any relevant legal authority for her claim that a "landlord's safety manual imposes a special duty of care on the landlord to protect tenants from open and obvious dangers," she had "waived any challenge to the summary judgment in this regard." Id. at 1226. We further stated that, "[t]o the extent that [the plaintiff] may argue that [the defendants] breached a special duty by failing to provide a safe, alternative route for [the plaintiff] to retrieve the mail," that "alleged special duty rests upon the principal of law this Court rejected in Gold Kist and, thus, is unavailing." Id.

III. Daniels Did Not Reject the Principles Set Forth in §§ 360 and 361 of the First Restatement and the Second Restatement

As noted, the Housing Authority argues that any duty imposed by

29

§§ 360 and 361 was abrogated by our decision in <u>Daniels</u>. After careful consideration, we see no reason to conclude that this Court's decision in <u>Daniels</u> upended our entire body of caselaw concerning the separate and distinct duties described in §§ 360 and 361 of the <u>First Restatement</u> and the <u>Second Restatement</u>.

First, the plaintiff in <u>Daniels</u> based her argument on § 343A of the <u>Second Restatement</u>. In concluding that the defendants in <u>Daniels</u> owed no general duty to the plaintiff with respect to the danger posed by the muddy sidewalk, this Court expressly relied on (1) <u>Gold Kist</u>'s holding that we have not adopted "'§ 343A as a correct statement of the law relating to the liability of a possessor of land,'" <u>Daniels</u>, 314 So. 3d at 1222 (quoting <u>Gold Kist</u>, 686 So. 2d at 261), and (2) this Court's subsequent recognition in <u>Sessions</u> that the general rule set forth in § 343A of the <u>Second Restatement</u> "is <u>not</u> the law in Alabama." <u>Id.</u> at 1224-25. Importantly, the holdings in <u>Gold Kist</u> and <u>Sessions</u> concern only whether a <u>possessor of land</u> owes his or her <u>invitee</u> a <u>general duty</u> to protect the invitee against known or obvious conditions on the land if "the possessor should anticipate the harm despite such knowledge or obviousness." §343A. In neither case did we mention -- much less reject

30

-- the specific rules of liability embodied in §§ 360 and 361 of the <u>First Restatement</u> and the <u>Second Restatement</u> that govern a landlord's duty of care to tenants in certain circumstances.

Further, our opinion in <u>Daniels</u> expressly noted that the plaintiff in that case had testified that "she typically avoided the danger by hopping over the mud," 314 So. 3d at 1225, and that there was evidence indicating that, "in addition to walking on the sidewalk to retrieve the mail, [the plaintiff] could walk on the street, walk through a breezeway, or drive her car to the mail kiosk and park in front of it in one of the spaces provided for that purpose." 314 So. 3d at 1216.[8]

_____

[8]As discussed above, in <u>Hancock II</u>, this Court explained that the specific rule concerning a landlord's liability with respect to certain areas over which the landlord retained control is "imposed so that 'tenants and their invitees may have <u>egress and ingress without unnecessary danger in the due exercise of the privilege or necessity of going to and from such apartment house or office building</u>.'" 393 So. 2d at 970 (quoting <u>Preston</u>, 241 Ala. at 543, 3 So. 2d at 413) (emphasis added). As noted above, in <u>Daniels</u>, there was evidence indicating that other means of "egress and ingress" were available to the plaintiff. Thus, the result in <u>Daniels</u> is consistent with the underlying purpose of the rules set forth in §§ 360 and 361.

As illustrated by <u>Daniels</u>, if the specific conditions set forth in §§ 360 and 361 do not apply, a tenant may be treated as an invitee in areas outside of the actual leased premises. <u>Daniels</u>, 314 So. 3d at 1222 n.4 ("'With respect to the common areas of an apartment complex, a tenant

Our decision in <u>Daniels</u> also did not -- expressly or implicitly -- overrule this Court's decisions in <u>Hancock I</u>, <u>Chambers</u>, or <u>Coggin</u>, <u>supra</u>, which recognized that the rules set forth in §§ 360 and 361 are well established under Alabama law. As the Court of Civil Appeals further explained in its opinion:

> "The plaintiff in <u>Daniels</u> does not appear to have adequately argued that any other exception or special duty applied to her claim, which involved merely a muddy sidewalk leading to the mail kiosk. <u>Daniels</u> did not expressly discuss <u>Restatement (Second) of Torts</u> §§ 360-61 or criticize the above-noted precedents discussing those sections as correct statements of Alabama law regarding exceptions to the general rule governing a landlord's duty as to an open and obvious danger. … [T]he supreme court gave no indication that [<u>Coggin</u> or <u>Hancock I</u>] had incorrectly stated the law or had been overruled as part of the court's addressing the general rule as to a landlord's duty."

<u>Wallace</u>, ____ So. 3d at ____.

For these reasons, we agree with the Court of Civil Appeals that this Court, in <u>Daniels</u>, did not intend to overrule long-standing Alabama law recognizing the specific rules of liability set forth in §§ 360 and 361.

---

has the same rights as an invitee.'") (quoting <u>Shelton</u>, 638 So. 2d at 825); <u>id.</u> at 1225 ("Applying <u>Sessions</u> [(an invitee case)] to the facts of this case ….").

32

Thus, although our holding in <u>Daniels</u> is sound, we caution that it should <u>not</u> be interpreted as rejecting a landlord's duties under the circumstances described in §§ 360 and 361 of the <u>First Restatement</u> and the <u>Second Restatement</u>. Moreover, because the Housing Authority failed to raise a genuine issue of material fact as to whether the principles set forth in §§ 360 and 361 apply to the circumstances in this case, we conclude that the Court of Civil Appeals properly held that the Housing Authority was not entitled to a judgment as a matter of law.

Conclusion

Based on the foregoing, we conclude that there is no conflict between the Court of Civil Appeals' decision in the present case and our prior decision in <u>Daniels</u>. We therefore affirm the judgment of the Court of Civil Appeals.

AFFIRMED.

Parker, C.J., and Shaw, Stewart, and Mitchell, JJ., concur.

Bryan and Mendheim, JJ., concur in the result.

Sellers, J., dissents, with opinion, which Wise, J., joins.

SELLERS, Justice (dissenting).

I agree with Judge Hanson's dissenting opinion, joined by Judge Fridy, which concludes that the Court of Civil Appeals' ruling in this case conflicts with this Court's recent decision in Daniels v. Wiley, 314 So. 3d 1213 (Ala. 2020). Accordingly, I respectfully dissent from this Court's decision to affirm the judgment of the Court of Civil Appeals.

In Campbell v. Valley Garden Apartments, 600 So. 2d 240 (Ala. 1992), which was overruled by Daniels, supra, this Court reversed a summary judgment that had been entered in favor of a landlord in a premises-liability action brought by one of the landlord's tenants after she slipped and fell on a slippery steel plate that spanned a drainage ditch on her way to the garbage dumpster that served her apartment. The trial court in Campbell had entered the summary judgment in favor of the landlord based on the fact that the tenant had knowledge of the slippery condition of the steel plate and, apparently, the implicit finding that she was contributorily negligent as a matter of law in choosing to walk over it. On appeal, this Court noted that "[a] landlord has a duty to maintain common areas in a reasonably safe condition in order to avoid liability for injury to a tenant or a guest." 600 So. 2d at 241. In support,

34

the Court in Campbell cited Hancock v. Alabama Home Mortgage Co., 393 So. 2d 969 (Ala. 1981), which acknowledged an exception to the general rule that tenants take leased premises subject to existing defects:

> "'[T]he owner of a building who leases it to different tenants, and expressly or impliedly reserves portions thereof, such as halls, stairways, porches, walks, etc., for the use in common of different tenants, is liable for any personal injury to a tenant, or a person in privity with a tenant, due to defects in the portion of the leased premises of which the landlord so retains control, provided the defect is ascribable to the negligence of the landlord, and the tenant or person injured is not guilty of contributory negligence.'"

393 So. 2d at 970 (quoting Prudential Ins. Co. of America v. Zeidler, 233 Ala. 328, 333, 171 So. 634, 638 (1937)). The Court in Campbell also pointed to the Restatement (Second) of Torts § 343A (Am. L. Inst. 1965), which provides that the possessor of land is generally not liable for harm caused to invitees if the danger that caused the harm was "known or obvious" to the injured invitee "unless the possessor should anticipate the harm despite such knowledge or obviousness." Based on Hancock and the Restatement, the Court in Campbell concluded that the landlord in that case had a duty to remedy the dangerous condition caused by the slippery steel plate even though that danger was known by the tenant. The Court noted that there was evidence suggesting that the tenant had

35

no reasonable alternative to walking over the plate to reach the garbage dumpster. Thus, according to the Court, questions of her contributory negligence or assumption of the risk were for a jury to decide and were not an appropriate basis for a summary judgment. 600 So. 2d at 242. Campbell arguably would support the position of the plaintiff in the present case, who fell while descending stairs with no safety rail leading from his apartment. See also Coggin v. Starke Bros. Realty Co., 391 So. 2d 111 (Ala. 1980) (plurality opinion) (cited by the Court of Civil Appeals in the present case and reversing a summary judgment that had been entered in favor of a landlord in an action with facts similar to those in this case). But Campbell has since been overruled, and its reasoning has been reasoning rejected by this Court.

In Daniels, supra, a tenant, Daniels, sued her landlord after she slipped in mud that had accumulated on the sidewalk leading from her apartment to the mail kiosk for her apartment building. The presence of the mud was open and obvious, and Daniels admitted to knowledge of it. The trial court in Daniels entered a summary judgment in favor of the landlord. On appeal, Daniels pointed to Campbell, supra, in support of an argument that her landlord could not escape liability based solely on

the open and obvious nature of the danger and her awareness of that

danger because, she asserted, the landlord should have anticipated that

tenants would walk through the accumulated mud in order to retrieve

their mail. However,

> "contrary to Daniels's contention, this Court in <u>Sessions [v. Nonnenmann</u>, 842 So. 2d 649 (Ala. 2002),] explicitly recognized that the law relied upon by Daniels holding that a landlord has a duty to eliminate open and obvious dangers or to warn an invitee of such dangers if the invitor 'should anticipate the harm' -- is <u>not</u> the law in Alabama."

314 So. 3d at 1224-25. The Court in <u>Daniels</u> expressly overruled

<u>Campbell</u> and other landlord-liability cases to the extent that they held

otherwise. And, because the accumulation of mud that caused Daniels's

injuries was open and obvious (indeed, the danger was known and

appreciated by Daniels), the landlord "did not owe Daniels any general

duty to mark the sidewalk and curb where the mud had accumulated or

to warn Daniels of the danger." <u>Id.</u> at 1225. The Court also rejected

Daniels's position to the extent that she claimed that her landlord had

"breached a special duty by failing to provide a safe, alternative route for

Daniels to retrieve her mail" because such an argument was based on the

already rejected concept that a landlord has a duty to remedy open and

37

SC-2023-0537

obvious dangers if the landlord has reason to anticipate that a tenant will be injured notwithstanding the open and obvious nature of the danger. Id. at 1226.

Although the Court in Daniels expressly discussed (and rejected) § 343A of the Restatement (Second) of Torts, I cannot, as the main opinion does, read the opinion in Daniels as affecting only the relevance of that particular Restatement provision and not precedent applying §§ 360 and 361 of the Restatement (First) of Torts (Am. L. Inst. 1934) and the Restatement (Second) of Torts. The Court in Daniels clearly stated that landlords do not have a duty to remedy dangerous conditions that are open and obvious and rejected Daniels's argument that the lack of a safer alternative route to the apartment building's mailboxes served to impose a special duty on the landlord to remedy the danger resulting from the accumulation of mud. I do not see any meaningful distinction between Daniels and the present case.

Moreover, it appears to me that Campbell, supra, which was undisputedly expressly overruled in Daniels, relied on precedent applying the concepts embodied in §§ 360 and 361 of the First Restatement and the Second Restatement, upon which the main opinion

38

in the present case relies. Specifically, <u>Campbell</u> cited <u>Hancock v. Alabama Home Mortgage Co.</u>, 393 So. 2d 969 (Ala. 1981) ("<u>Hancock II</u>"), for the proposition that landlords have a duty to maintain common areas in a safe condition. <u>Campbell</u>, 600 So. 2d at 241. The Court in <u>Hancock II</u> referenced an earlier opinion involving the same parties in that case, <u>Hancock v. Alabama Home Mortgage Co.</u>, 372 So. 2d 858 (Ala. 1979) ("<u>Hancock I</u>"), which, as the main opinion points out, stated that the rule set out in § 360 of the <u>Restatement (Second) of Torts</u> "has long been the rule in this State." 372 So. 2d at 858. Thus, it seems to me that, in overruling <u>Campbell</u>, the Court in <u>Daniels</u> rejected the basis of imposing a duty on landlords to remedy open and obvious dangers that the majority opinion in this case embraces.

In sum, I cannot construe <u>Daniels</u>'s conclusion that landlords do not have a duty to remedy open and obvious dangers as leaving unaffected prior opinions that can be read to suggest the opposite conclusion, albeit with references to portions of the <u>Restatement</u> not expressly discussed in <u>Daniels</u>. This includes <u>Coggin</u>, supra, upon which the Court of Civil Appeals relied in reversing the trial court's judgment in the present case and which cited <u>Hancock I</u> and §§ 360 and 361 of the <u>Restatement</u> in

39

reversing a summary judgment in favor of a landlord that had been sued by a tenant who fell from a staircase lacking a handrail. Because I believe that <u>Daniels</u> overruled prior decisions suggesting that landlords have a duty to remedy open and obvious dangers, I respectfully dissent. I do not mean to suggest that landlords might not be required under other laws and regulations to repair their properties to remedy defects posing a danger to tenants. But those other rules, under Alabama law and based on <u>Daniels</u>, cannot make a landlord an insurer of a tenant's actions on the property.

Wise, J., concurs.